Garden Coal Company, Inc. and Old Republic Insurance Company, Insurance Carrier *v.* Workmen's Compensation Appeal Board and Russell Ateon. Garden Coal Company, Inc. and Old Republic Insurance Company, Insurance Carrier, Appellants.

Argued October 25, 1976, before Judges CRUMLISH, JR., KRAMER and MENCER, sitting as a panel of three.

*Joseph J. Lee,* for appellants.

*Mary Ellen Krober,* Assistant Attorney General, with her *David A. Ody,* Assistant Attorney General, and *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE KRAMER, December 16, 1976:

This is an appeal by Garden Coal Company and its insurance carrier (appellants) from a decision of the Workmen's Compensation Appeal Board (Board). On October 10, 1974, the claimant, Russell Ateon, filed a petition pursuant to Section 108(q) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §27.1(q), claiming compensation for total disability resulting from coal-worker's pneumoconiosis. After a hearing, the referee awarded the claimant total disability benefits, of which 25% were to be paid by appellants and 75% by the Commonwealth of Pennsylvania.

The referee made the following findings of fact, which read in pertinent part:

9. That the claimant was examined by Dr. Russel Boykiw . . . on August 13, 1974, and a copy of Dr. Boykiw's medical report dated September 10, 1974, along with an x-ray and pulmonary function studies were offered into evidence without objection. Dr. Boykiw concluded that the claimant 'is totally disabled because of pulmonary fibrosis resulting from coal dust and secondarily pulmonary emphysema.'

. . . .

12. That after considering all of the testimony and medical evidence presented, your ref-

eree finds as a fact that the claimant has been totally and permanently disabled since August 13, 1974, because of coal worker's pneumoconiosis. ...

13. That the claimant first learned the cause of his disability on September 10, 1974. ...

. . . .

15. That on January 9, 1974, the claimant filed a Claim Petition under Section 301-i of the Pennsylvania Occupational Disease Act, and an award was made for total disability at the rate of $100.00 per month beginning August 13, 1974. ...

On appeal, the Board, without taking additional evidence, affirmed the referee's decision; however, pursuant to Section 305.1 of the Act, 77 P.S. §411.1 and based upon referee's finding of total disability as of August 13, 1974, the Board reassessed the liability for compensation to 50% to be paid by appellants and 50% by the Commonwealth.[1]

In this appeal, there is no dispute as to the claimant's total disability. The sole issue raised is whether the Board committed error in modifying payment

---

[1] Section 305.1 Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §411.1 provides:

Any compensation payable under this act for silicosis, anthraco-silicosis or coal-worker's pneumoconiosis as defined in section 108(q) for disability occurring on or after July 1, 1973 or for death resulting therefrom shall be paid as follows: if the disability begins between July 1, 1973 and June 30, 1974, inclusive, the employer shall pay twenty-five per centum and the Commonwealth seventy-five per centum; if the disability begins between July 1, 1974, and June 30, 1975, inclusive, the employer shall pay fifty per centum and the Commonwealth fifty per centum; if the disability begins between July 1, 1975 and June 30, 1976, inclusive, the employer shall pay seventy-five per centum and the Commonwealth twenty-five per centum; and if the disability begins on or after July 1, 1976, all compensation shall be payable by the employer. The procedures for payment of compensation in such cases shall be as prescribed in the rules and regulations of the department.

of the award on the basis of the referee's finding of the date of disability as August 13, 1974. Where, as here, the party with the burden of proof has prevailed below, the scope of review of this Court is limited to determining whether constitutional rights were violated, an error of law committed or any necessary finding of fact was unsupported by substantial evidence. *Workmen's Compensation Appeal Board v. Western Packer's, Inc.*, 22 Pa. Commonwealth Ct. 598, 350 A. 2d 194 (1976).

Appellants contend that finding number 15 establishes the claimant's knowledge of his total disability on or before January 9, 1974, when he filed his 301(i) petition and averred therein his total disability. January 9th, they argue, should be the date of disability insofar as contributions between themselves and the Commonwealth are concerned.

The appellants' arguments are susceptible to two interpretations. It is not clear which of these is relied upon, therefore we will deal with both. The first possible interpretation of appellants' argument is that the date of disability for the purpose of determining the allocation of percentages is not necessarily the same date upon which the claimant is entitled to compensation for total disability; the former being January 9, 1974, and the latter being August 13, 1974.[2] If this is appellants' position it is without merit.

The Commonwealth's obligation to pay a part of the compensation is an assumed gratuity in relief of the employer, and, as such, the extent of that obliga-

---

[2] As noted in the opinion of the Board, the beginning date of the award, October 10, 1974, was in error. Under Section 306(d) of the Act, 77 P.S. §514, the beginning date of the award should have been August 13, 1974. However, the claimant did not appeal on that point and it is mentioned here only to avoid confusion regarding the date upon which the claimant became entitled to compensation.

tion is to be fixed at the time when the employer's *duty* to pay compensation comes into existence. *Rakoczy v. Jandy Coal Co.*, 26 Pa. Commonwealth Ct. 459, 363 A.2d 1338 (1976); *Workmen's Compensation Appeal Board v. Jones & Laughlin Steel Corp.*, 24 Pa. Commonwealth Ct. 176, 354 A.2d 925 (1976); *Workmen's Compensation Appeal Board v. Rochester & Pittsburgh Coal Co.*, 23 Pa. Commonwealth Ct. 441, 353 A.2d 82 (1976); *See Pekorofsky v. Glen Alden Coal Co.*, 171 Pa. Superior Ct. 97, 89 A.2d 890 (1952).

The second possible interpretation of appellants' argument is that, while the date of disability for allocating percentages is the same date as that upon which the claimant became entitled to compensation, this date should be January 9 and not, as the referee found, August 13. Appellants contend that it was an error of law for the referee to utilize the date of *medical confirmation* of claimant's disability (August 13) and not the date, as evidenced in the 301(i) petition, upon which claimant had *"knowledge"* of his disability (January 9). We cannot agree. It is certainly true that the claimant knew of his poor state of health when he filed his petition under Section 301(i) of The Pennsylvania Occupational Disease Act,[3] but it cannot be said, upon the facts in the record, that he had *knowledge* of its precise nature or its causal link with his employment. It was Dr. Boykiw's examination which provided *medical confirmation* of a "self-diagnosis" by the medically untrained claimant. We cannot say, as a matter of law, that the referee was bound, as to determining the date of disability, by the self-diagnosis of a lay person.[4]

---

[3] Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. §1401(i).

[4] It is to be noted that under Section 311 of the Act, 77 P.S. §631, compensation is disallowed in occupational disease cases if the claimant fails to give notice to his employer within 120 days after he knows, or by the exercise of reasonable diligence should have known, of the existence of a disability and its *possible relationship*

Finally, the referee's determination that August 13, 1974 was the date upon which the claimant's total disability commenced is supported by substantial evidence in the record, and this Court, as well as the Board, is bound by that determination. *See Page's Department Store v. Velardi,* Pa. , 346 A.2d 556 (1975). The application of the law of Section 305.1 was within the Board's scope of review, and, since August 13, 1974, falls within the period from July 1, 1974, to June 30, 1975, inclusive, the Board was correct in reallocating the liability percentages between appellants and the Commonwealth from 25%/75% to 50%/50%. *Workmen's Compensation Appeal Board v. Rochester & Pittsburgh Coal Co., supra.*

Accordingly we enter the following

ORDER

AND Now, this 16th day of December, 1976, the decision of the Workmen's Compensation Appeal Board,

---

to his employment. It would appear that such a challenge may have been successful under the facts in the present case, but the issue of notice must be distinguished from the issue faced in the present appeal. "The purpose for requiring such notice is, of course, to protect the employer from stale claims for accidental injuries, of which he would have no knowledge, made after the opportunity had passed for a full and complete investigation thereof." *Canterna v. U. S. Steel Corp.,* 12 Pa. Commonwealth Ct. 579, 582, 317 A.2d 355, 356 (1974). Thus, a *claimant's* knowledge of his physical inability to work and its *possible relationship* to his employment is the logical triggering event for the notice requirement. The situation is different when, as here, at issue is the date upon which the claimant became legally totally disabled. After the referee found the claimant to be totally disabled on the basis of medical evidence, it was logical for him to find the date of disability as that date upon which medical verification occurred. Moreover, as a general proposition, use of the date of medical verification precludes the possibility of a claimant receiving compensation for *total disability* from the date upon which he is alleged to have first known of his disability and its possible relationship to his employment, when, in fact, he may have suffered only *partial, or no, disability* up until shortly before his medical examination.

at Docket No. A-70765, filed January 16, 1976, is hereby affirmed. Compensation is awarded to the claimant herein at the rate of $100 per week, the maximum rate provided by the Act in force on August 31, 1973, the last date the claimant worked. Fifty per cent or $50 shall be paid by Garden Coal Company, Inc., appellant, and its insurance carrier, Old Republic Insurance Company, and fifty per cent or $50 by the Commonwealth of Pennsylvania. Payments to begin on October 10, 1974, and continuing within the limitations of the Act. All compensation awarded herein shall be paid to the claimant, Russell Ateon, by the Old Republic Insurance Company, pursuant to Rule 121.21(b) of the Bureau of Occupational Injury and Disease Compensation. Interest is assessed at the rate of ten (10%) per cent per annum on all deferred payments owing by the appellant insurance carrier.

It is further ordered that the Commonwealth of Pennsylvania is entitled to credit for any payments under the Award for 301(i) benefits under Claim Petition No. 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 paid or payable after October 10, 1974.