Nunzio M. Minadeo, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Geiger & Sons, Respondents.

Argued March 8, 1979, before Judges WILKINSON, JR., MENCER and DISALLE, sitting as a panel of three.

*Edward P. Wittman,* for appellant.

*Stanley G. Berlin,* for respondents.

Opinion by Judge Mencer, June 18, 1979:

Nunzio M. Minadeo (claimant) bumped his ankle while working as a stonecutter for Geiger & Sons (employer) on May 10, 1974. This injury aggravated a preexisting condition known as stasis-dermatitis, causing the development of swelling, ulceration, and cellulitis. As a result, claimant was unable to work after June 3, 1974. Stasis-dermatitis, described as an inflammation of the skin due to stagnation of blood, was caused by claimant's fractured left heel in 1966 and the attendant development of circulatory problems, including phlebitis and venous incapacity. As a result of this condition, claimant has suffered from swelling, ulcerations, and cellulitis of varying severity on numerous occasions between 1966 and 1974. Workmen's compensation benefits were granted for total disability between June 3, 1974 and January 9, 1975 but not thereafter. Claimant has appealed from this decision, alleging that he remains totally disabled as a result of the May 10, 1974 incident.

The only issue on appeal is whether the referee capriciously disregarded evidence in finding that the aggravation of claimant's condition had ceased as of January 9, 1975 and that any disability thereafter is a result of the preexisting condition itself rather than the May 10, 1974 injury.

Dr. Heibel testified on claimant's behalf that his impaired circulation was aggravated and accelerated by his injury and that, if this injury had not occurred, claimant would still be working. Heibel, however, failed to explain the basis for this conclusion, *i.e.,* he did not explain *how* claimant's condition had changed or been made worse by the injury so that he was able

to work before the injury but not afterward. Additionally, Heibel testified that over a year before the injury he had informed a rehabilitation center on claimant's behalf that claimant had lost the use of his left leg for the work in which he was engaged. He recommended at that time that claimant be trained for other work.

On the other hand, Drs. Narus and Tavana testified on claimant's behalf that the stasis-dermatitis condition is permanent and irreversible, will be more or less severe throughout claimant's life, and may flare up at any time, whether as a result of trauma, mere scratching, or other causes. Tavana indicated that the condition is considered under control when swelling, cellulitis, and ulcers are not present and testified that claimant's condition was under control as of January 9, 1975. He indicated that walking, resting with feet elevated, and use of a support stocking were the only effective means of maintaining control of the condition. With this in mind, Tavana testified that claimant was capable of working as of January 9, 1975 as long as the work did not involve long periods of sitting or standing. He stated that, although claimant could return to his former work at that time, he believed it would probably be harmful, due to the required standing. We note that Tavana's opinion regarding the harm associated with claimant's former work is not unlike Heibel's advice given to the rehabilitation center a year before the injury in May 1974.

The evidence shows that claimant's preexisting condition has and will continue to vary between being controlled and being aggravated, that the complications arising after the injury were similar to those which were occasionally experienced before the injury, and that a year before the May 1974 injury it was recommended that claimant be trained for different work because he had "lost the use of the leg." There is a

lack of positive evidence that claimant's condition, after the complications were under control in January 1975, differed from his condition before the May 1974 injury. It is for the referee as factfinder to determine credibility and weight of the evidence, *see Davis v. Workmen's Compensation Appeal Board,* 41 Pa. Commonwealth Ct. 262, 398 A.2d 1105, 1106 (1979); and, as factfinder, he may disregard even uncontradicted testimony if it lacks credibility, *see Berdy v. Glen Alden Corp.,* 202 Pa. Superior Ct. 525, 198 A.2d 329 (1964). Under these circumstances, we are satisfied that the referee did not capriciously disregard Heibel's testimony in finding that the aggravation of claimant's preexisting condition on May 10, 1974 had ceased as of January 9, 1975 and that any disability thereafter resulted from the preexisting condition.

## ORDER

AND Now, this 18th day of June, 1979, the appeal of Nunzio M. Minadeo is hereby dismissed, and the order of the Workmen's Compensation Appeal Board, dated April 20, 1978, is affirmed. Accordingly, it is ordered that judgment be entered in favor of Nunzio M. Minadeo and against Geiger & Sons and/or Pennsylvania Manufacturers' Association Insurance Company, in the amount of $106 per week, commencing June 3, 1974 and continuing through January 8, 1975, together with interest at the rate of 10 percent per annum on deferred payments of compensation from the date due to the date paid, all within the terms and limits of The Pennsylvania Workmen's Compensation Act.

In addition, Geiger & Sons and/or Pennsylvania Manufacturers' Association Insurance Company are directed to pay the following medical and hospital expenses, reimbursing Nunzio M. Minadeo for those amounts paid by him:

| | |
|---|---|
| Edward J. Heibel, M.D. | $ 6.00 |
| V. T. Narus, M.D. | 29.00 |
| M. Tavana, M.D. | 195.00 |
| St. Vincent Hospital | 835.90 |
| Prescriptions | 106.53 |
| Mary F. Hines, Reporter | 73.50 |
| Edward J. Heibel, M.D. | 50.00 |
| V. T. Narus, M.D. | 100.00 |
| M. Tavana, M.D. | 50.00 |
| St. Vincent Hospital | 15.00 |
| Donna Monaco, Reporter | 44.00 |
| Cecelia Muhanna, Reporter | 4.50 |

In addition, Geiger & Sons and/or Pennsylvania Manufacturers' Association Insurance Company are directed to pay to claimant's counsel 20 percent of the above award as counsel fees which shall be chargeable to claimant's award.